Ruffiií C. J.
 

 The statute of 18(58, Rev. Stat. c. 110, gives to a woman an action for words “which amount to_a
 
 *138
 
 charge of incontinency;” which imports, we think, not mere-imputation of impure desires or a lascivious disposition, but the criminal fact oí adultery or fornication. It has not pleased the Legislature to go farther, and, perhaps, it could not be safely done; though often the accusation of a propensity, or the imputation of such conduct as only evinces propensity, and'nothing more, may be as destructive to the reputation of a woman, as the most explicit charge of personal prostitution. In the case before us, with every inclination to receive the words in the sense in which they were meant by the speaker, and were or would reasonably be understood byhearers, we cannot say, that, as stated by the two first witnesses, they import a charge of the very act of adultery, but only evil thoughts in the heart, which, perhaps, only waited for opportunity to break out into open lewdness. .
 

 But one cannot be at a loss as to the sense in which the words' proved by the last witness are to be received. It is to be-remarked in- the beginning, that the defendant isdiable upon these words, as if he had directly affirmed the fact to be as he says it was reported, inasmuch as he states the report or impression about the plaintiff’s character as a gene-mi impression, without disclosing the name of any person from whom he received it.
 
 Lord, Northampton’s
 
 case, 12 Rep.
 
 32.
 
 And, indeed, if he had given the author, the repetition of this slander was so obviously malicious and for evil ends, that, upon the averment of those facts, it might have been left to the jury to find for the plaintiff, unless the defendant proved the fact of her guilt with him.
 
 Hampton v Wilson,
 
 4 Dev. 468. Then the caséis to be taken, that the defendant declared, “he kept McBrayer’s wife.” The word dkept” has many significations, according to the subjects to whichdt. is applied. But it is a common and well established' sense of it, when used in reference to connexions between the sexes, to denote habitual and criminal carnal conversation, amounting to cohabitation. Every one knows at once, what is meant by the terms “kept mistress;” or what is laid to the-charge of a man, who is said “to keep a mistress.” It is
 
 *139
 
 not the meritorious act of providing for or maintaining a virtuous lady in her innocence: but it is the vicious one of having a wanton at his command for carnal gratification— of
 
 keeping
 
 her for sensual uses. This seems to us the natural import of the words in themselves, as the people in the country would universally understand them. But, at all events, they are susceptible of that interpretation; and therefore ought to have been left to the jury to determine "the sense, in which they were meant by the speaker and in which the hearers understood them.
 
 Studdard
 
 v
 
 Linville,
 
 3 Hawks, 474.
 
 Woolnoth v
 
 Meadows, 5 East. 463. That the word “kept” was not here used with an intent of onlysa-yingthat the defendant innocently provided for this woman, or had her in custody, or was exercising towards her any other benevolence or any proper.control over her, is evident from the circumstances and" colloquium. He was speaking of the trial of an indictment against him for an assault on this same person, and he gives as a reason, why the husband did not prove her
 
 good character
 
 on that occasion, that it was the general impression .that
 
 he kept his wife.
 
 The meaning is plainly, that the husband could not prove his wife’s good character, because the defendant
 
 kept
 
 her, and therefore her character was not good, but bad ■; and in what sense bad, as meant by the defendant, no person can doubt. What else could the defendant mean, under such circumstances, but to charge a report, which -is the same thing as the charge of the fact, that the
 
 feme
 
 plaintiff had been guilty of habitual adultery with the defendant himself? The obvious import of the words is defamatory, and, under the attending circumstances, they are so plainly pointed towards the charge of this particular offence, that, unless a judge is not to use his understanding like other people, we cannot give them any other acceptation. They meant that or they meant nothing.
 

 Per Curiam, J udgment reversed and
 
 venire d& novo
 
 awarded.