The publication made by the plaintiff concerning the defendant is so obviously and grossly defamatory that it must be taken upon its face to have been made with the intent to injure the character of the defendant, and, therefore, that it was, in a legal sense, malicious and libelous. The defendant had unquestionably, then, probable cause for instituting a prosecution for the libel — at least, prima facie. We are not prepared to say at present that even proof in this action of the defendant's guilt of the matters, charged on him in the libel, would deprive him of the bar to the action arising out of the probable cause the defendant had for supposing the plaintiff liable to (451) indictment for that malicious publication; for, although when indicted the plaintiff could have given the truth of his charges in evidence, and thereupon would have been entitled to an acquittal, yet he was prima facie guilty of libeling a citizen, and, therefore, might justly, perhaps, be called on for his proof, and ought not to have his action against one for so doing. We entertain serious doubts whether the statute, which allows the truth to be given in evidence upon an indictment for a libel, can be carried further and to the extent of giving to the defendant in the indictment an action against the prosecutor for malicious prosecution because the libel was true, for his acquittal arises upon evidence which he is compelled to give on his part in order to extricate himself from a state of probable and apparent guilt; and it would seem to be almost impossible to persuade a jury that a person, libeled as the defendant was, preferred a prosecution against his defamer from motives of malice merely, instead of a desire that the person should be punished for the malicious publication complained of by him; and without such malice by the prosecutor, this action ought not to have been sustained, even though there had not been probable cause. But the point was not made in this case nor argued before us, nor, indeed, has it been much considered by us; and as we think it deserves to be well *Page 312 
discussed and considered before a decision of it either way, we do not think proper now to lay down any rule in respect to it, since in our opinion, this case may be determined and a venire de novo must be awarded upon other points on which there is no doubt.
If the truth of the charges made in a libel will not only justify the publication, when the author is tried for it, but also will give him an action for malicious prosecution, it is plain that to have this last effect the charges ought to be strictly true, by plain and full evidence. (452) This plaintiff avowed in this publication itself the purpose of provoking the defendant to sue or prosecute him for it. He expressly invited the very proceeding of which he now complains, as, indeed, every libeler impliedly does. Then he ought to be prepared to make good every word he thus utters to gratify his malevolence, and is entitled to no charitable construction of his language, nor liberal extension of his evidence beyond its necessary import; for a libeler is not a public benefactor, but is among the most licentious, malignant, and mischievous of our race, and, therefore, can ask no indulgence to which he is not entitledstricti juris.
The plaintiff's proof in this case not only did not sustain his charges strictly, nor even substantially, but, in the opinion of the Court, signally failed in respect to each and every one of them.
The first is: "I hereby certify that Jo. Lance is a liar. And if the boy wants it, I can do as I have done before — I can prove it." This is a direct and positive averment that Lance is a liar; and it is perfectly plain that its truth is not sustained by evidence that he had the general character of being a liar. If Lance had brought an action for the libel, a plea of such a general reputation would not justify the charge, though the fact might mitigate the damages; for the charge affirms as a positive fact that he was guilty of the despicable vice of lying, while the proof is notof the fact, but that people suppose him to be thus guilty. If one accuse another of stealing a horse, the plea of a common rumor that the person is a horse thief will not amount to a justification in an action for the libel, more than evidence of such a rumor would establish the party's guilt upon an indictment for the theft. Reputation is in no case evidence that one is guilty of a specific offense; and that is the charge here.
The next imputation on the defendant is: "I heard Mr. W. H. F. tell him to his face that he had sworn a lie, and stole a hog, and he (453) could prive it; for which the said Lance had like to have rode Ball to death for a writ, which he obtained, and Mr. W. H. F. was bound to court; and I was told since that one glass of apple-jack cured the wound, and I reckon it was true, for I saw the gentlemen drink friends." Here are two libelous imputations against the *Page 313 
defendant. The one, that the plaintiff had heard some person, not named, but designated only by the initials, "W. H. F.," accuse the defendant to his face of the crime of perjury, and the other that the defendant either sued or prosecuted "W. H. F." therefore, and then, as the plaintiff had heard from some one not named, the defendant had compounded the case over a glass of liquor without the accusation being retracted or compensated in any other way. Neither of those charges is sustained by the evidence, as we apprehend. The latter, plainly, was not. According to the libel, a glass of apple-jack cured the wound, so that the defendant was pacified by a drink. But Fulton's testimony did not prove any such thing. He says that he and the defendant "agreed to settle the matter and be friends, and that, at the instance of mutual friends, they took a drink together and parted friendly; but that afterwards the defendant refused to stand to the agreement." Now, it is plain that, according to this testimony, the liquor did not cure the wound and induce the defendant to dismiss his suit against Fulton. In fact, it was not compounded at all, and, as far as appears, is now pending. Fulton says "they agreed to settle the matter," but upon what terms was not specified, or, at least, he mentions none. The natural inference is that as the parties were to be "friends," the settlement was expected by the defendant to be made on such terms as became that relation — which, certainly could not be that he should dismiss his suit and pay the costs, and lie quietly down under the unretracted charge by his "friend" of perjury and theft. That could be no "settlement of the matter," but only a downright abandonment of all right to redress. That was not what Lance intended, and hence he did (454) not and would not "settle" the suit, because, when the parties came to talk about the terms, they could not agree. The drink of spirits was, therefore, not the price of the slander upon him, and of his suit; but it turned out that while the parties were in treaty for a compromise (which was never closed) they drank together, at the instance of friends who wished to promote peace between them. That transaction was, therefore, grossly perverted in the plaintiff's publication, according to his own evidence in support of it.
The other and more serious branch of the charge under consideration was equally destitute of support in the evidence. That consisted of the testimony of William H. Fulton that, before the publication, he had charged the defendant to his face with having sworn to a lie and stolen a hog, and that the defendant sued him for it, and that thereafter the transactions with a view to a compromise occurred, which have been already stated. The deficiency in the proof is that there is none whatever to the truth of the charges thus made by Fulton on Lance, that is to say, that, in fact, the latter did swear to a lie and did steal a hog, *Page 314 
as we unanimously hold there ought to have been. It has long been settled that, even in cases of oral charges, the repeater, who does not at the same time name his author, takes the assertion upon himself and can only justify by proving the truth of the accusation. Earl ofNorthampton's case, 12 Rep., 132. Within that rule the plaintiff was bound to give evidence of the guilt of the defendant; for he does not mention the name of the person from whom he heard the charge, but designates him by initial letters only, as "Mr. W. H. F. This did not give the defendant a certain cause of action against any other person in particular, and, therefore, according to the case cited, an action would lie against the repeater himself, unless he established the truth (455) of the charge. But if it were admitted that "W. H. F." might, under the circumstances, be understood to be "William H. Fulton," yet the plaintiff would not be exonerated from the burden of proving the charge to be true. Where the slander is oral, and the repeater gives the name of the person from whom he heard it, the Court strongly intimated the opinion in Hampton v. Wilson, 15 N.C. 468, and McBryer v. Hill, 26 N.C. 136, that the justification depended upon the quo animo the charge is repeated and propagated; and with that we are, upon longer reflection, entirely satisfied; for, if one circulates a slander with the design to cause it to be believed either upon his own credit and character or those of his author, that the person implicated is guilty of the fact charged, he really and truly, though covertly, endorses the charge and should bear the burden of having affirmed its truth. He meant, when the repeated the slander, that thereby the party's character should be injured. How? By inducing the world to think that as such a man made the charge, and he, the repeater, gives it currency, it is true. That is the substance of what one intends and does who propagates a slander malo animo, that is, with the purpose of detracting from his neighbor's character and standing in society; and, therefore, he ought to be held bound to prove the charge as he meant it should be understood. If that be so where the slander is oral, much more is it true when it is printed or written, because the ill-feeling and evil purpose of the propagator are more distinctly exhibited, and the injury done to the other party is more extensive and durable.Lewis v. Walton and Dole v. Lyon, which were cited in Hampton v.Wilson, hold clearly that a justification by giving the author is inadmissible altogether in actions for libels; and the familiar case of the liability of the printer of a newspaper for a publication therein of another person, under the author's name, is conclusive upon the point. There have also been several cases since, both in England and (456) this country, to the same effect. The present is the first case in this State in which the point has arisen directly. But the conclusion *Page 315 
necessarily follows from what has been held and said in the other cases before mentioned, and particularly in S. v. White, ante, 180. In that case we held that upon an indicement for a libel the publication of a charge as a rumor was not justified by proof of the rumor, but required proof of the charge itself; and it was distinctly stated by my brother Nash that even if the author had been given, it would have made no difference, unless the defendant had shown that he made the publication for a good end and without the evil one of defaming the prosecutor. Now, this plaintiff did not ask to be excused upon a good motive that actuated him, but insisted only that upon strict law he was justified by the truth. The truth of what is it to be understood? He says it is that Fulton told Lance he was forsworn and a theif. [thief] But was that all he meant the readers of his piece tobelieve from it? Certainly not. Courts must read like the world does, and understand charges in the same sense in which other men do. No person can read this piece without seeing that the plaintiff intended to injure the defendant's character as far as he could, and to have it believed that he was guilty. It is to that end that he says he heard the defendant charged with those crimes to his face, and that, after suing for the scandal, the defendant gave up the suit for the pitiful pretense of a drink of friendship, without any reparation by damages or acknowledgment of injury and pardon asked. Is it not clear the plaintiff supposed and intended that the world would infer from such conduct of the defendant that he had no character to vindicate, and was afraid to bring his suit to trial from a consciousness of guilt; in fine, that the public would infer that the defendant was really guilty? He ought, therefore, to make good the charge in the sense in which he intended to make it, which is, by proving the acts charged (457) on the defendant.
The last charge is the direct one of "selling milk and water at 10 cents per pound," and the evidence was an offer to sell butter from which the milk and water had not been perfectly separated. Upon the most favorable presumptions for libelers — to which, indeed, they are not entitled — evidence of an intention to do an act does not prove a charge of the act done. Besides, a man may innocently take a parcel of butter to market which may not have been properly beaten up by the dairy woman, while few would suppose that he could fairly sell milk and water at the price stated. Things are not to be taken in their worst sense against a person accused, but his innocence rather is to be assumed until the contrary be shown, and libelers ought not to be encouraged to misconstrue and misrepresent the conduct of others by allowing them boldly to make specific charges, and then support them by loose evidence of something that was not entirely creditable to the other party. They *Page 316 
ought to confine themselves in the gratification of their bad passions to making such charges only as they can fully and strictly prove.
Upon the whole, it appears from its contents that this was a publication of as pure spite as one almost ever sees; and, as we think, it was not supported by proof in any part of its substance, and, consequently, this action was groundless.
PER CURIAM. Venire de novo.
Cited: Hamilton v. Nance, 159 N.C. 59.
(458)