D. B. BURNS v. J. A. WILLIAMS and others.

*Slander—Pleading.*

1. In slander, the complaint must set out the actionable words spoken, not simply a narrative of what occurred on a certain occasion; and they must amount to a direct *charge*, not a mere *suspicion* of the, commission of the alleged offence.

2. A complaint containing two unconnected alleged causes of action against different persons, is demurrable.

CIVIL ACTION for slander tried at Spring Term, 1882, of CHATHAM Superior Court, before *Graves, J.*

The action against the defendants is for verbal slander, and the complaint alleges two independent and separate causes of action. It sets out in detail, with the attending incidents, a conversation at the house of the plaintiff between his wife and the defendant, Oran Williams, on January 3d, 1881, the other defendants, his brother and brother's son, who had gone there with him, being present but saying nothing, the substance of which was that two hogs, belonging to the brother, Joseph Williams, had been missed, and defendant getting on the track, had traced it to that place; that thereupon an examination of the hog-pen was made by the defendants, Oran, and John A., but without discovering any of the lost property.

The complaint further avers that soon afterwards on the same day, the defendant, John A., overtook the plaintiff on the road, traveling in his wagon, and having halted him, the following conversation occurred:

The defendant inquired what the plaintiff had in his wagon, and was told it was pork. He again asked of what size, and was answered by the plaintiff that there were three shoats in a sack; the defendant remarked, if there were but one or two hogs he desired to see them; and he was then invited to make an examination and see for himself, which ·he declined to do; that

the defendant then proceeded to say substantially as follows: Two of my father's marked stock are gone; they were seen frequently lying in the bed and were caught not far from it and tied and thrown over stakes. I saw there the track of a wagon and I followed it as it passed near the place where the stakes were, and the hogs were put in the wagon; they were bound to be put in it and carried away, for the foot-prints of the hogs were nowhere seen leading off from the spot, and they did not have wings to fly. I then tracked the wagon, not knowing where it was going, but it appeared to be moving to the big road, and followed it to your house, where it stopped and could not be tracked any further. My father and uncle Oran and Ambrose Thomas are witnesses of these facts. I would have searched more carefully at your house, but for its confusing your wife— the hogs that I saw there were not of his stock. The plaintiff then moved on, and, the defendant following, added: You have caught further than you have a right to catch and further than I would have caught. I will go and see Robert Laster, and, being urged by plaintiff to do so, said, I reckon some of my party were there already, and if not, I will get some disinterested person to go, who could find out more than I can; if I go I am afraid of making some confusion, and will send one William B. Knight.

The conversation then ceased and the defendant rode away and the plaintiff proceeded on his journey.

The complaint then avers that by these "*acts, facts, conduct and declarations*, the defendants and each of them intended falsely and maliciously to charge the plaintiff with the felonious taking and carrying away of the hogs of the defendant, Joseph Williams, and to impute to him (the plaintiff) the crime of larceny, and they were so understood "by the persons (naming them) who were present and heard and saw what was said and done."

Answers were put in, and from the controverted allegations issues were eliminated and submitted to the jury, of which the

first two involved an inquiry into the truth of the allegations concerning the two interviews and conversations described, and the third was whether the crime of larceny is charged.   The other two issues related to an alleged compromise and adjustment of the matter in dispute (pending the action and not necessary to be set out) and an inquiry as to damages.

Upon the trial, after the evidence had been heard and during the progress of the argument of the plaintiff's counsel before the jury, he was interrupted by a remark of the judge, who stated .that he should instruct them that there was no testimony inculpating the defendant, Joseph Williams, and that the allegations in the complaint were not in themselves actionable so as to entitle the plaintiff to recover.   The counsel, in submission to this intimation, suffered a nonsuit and appealed.

*Mr. J. H. Headen,* for plaintiff.
*Mr. John Manning,* for defendants.

SMITH, C. J., after stating the facts.   It will be seen on examining the structure of the complaint (and we advert to it to avoid misconstruction from our silence) that it imputes the utterance of the alleged defamatory words to all the defendants and to each one of them, while its statement is that, of the three who went to the plaintiff's house in search of the missing hogs, but one of them, Oran, said anything, and the others were present but took no part in the conversation, and that only one of them, the defendant, John A., was present, and said and did what is alleged to have taken place on the road afterwards, in the hearing of the two witnesses named.

There are thus two unconnected alleged causes of action against different persons set out in the same complaint, a method of pleading finding as little support in the present, as in the former, system of procedure.

The complaint moreover does not specify the actionable words spoken, but gives a narrative of what occurred on two separate

occasions, consisting of expressions and acts, and undertakes to deduce therefrom an intention on the part of the one and the other defendant to charge the plaintiff with stealing the hogs.

We have in vain searched for any precedent for this form of declaration or complaint in an action for the utterance of actionable words. It is a fixed rule of pleading that the plaintiff shall set out, show a direct charge against himself of his commission of the imputed offence when the slander consists in this; or of the utterance of words, which in the light of other facts, are calculated and understood to convey such an imputation to those who may be present and hear. The language used must charge the crime directly, or have its meaning pointed by facts and circumstances which interpret its import. The complaint should be so drawn that the court, upon a demurrer or motion in arrest of judgment, can determine if a cause of action is charged, taking the facts averred to be true, and this without the aid of inferences to help them out.

In vain will we look in this complaint for any language, in either conversation, which alone, or in connection with the attending circumstances, shows that the plaintiff is charged with larceny. The conduct of the defendants, in association with what was said about the lost hogs and the trail of the wagon, indicates, at most, a suspicion that the plaintiff carried them away, but nowhere is it so charged by any one of them. Indeed a witness of the defendant present at the interview between the defendant, John A., and the plaintiff, testifying, says, that the latter declared that he did not accuse any one of taking them. We refer to this to show that the language used by him is not reasonably susceptible of a construction that amounts to a charge of larceny, and only evinces a suspicion that the plaintiff had taken and removed the hogs. But a suspicion lurking in the heart and manifested in one's conduct, is not the same thing as a charge of a committed criminal act, unless perhaps, when a suspicion is expressed in a form to impute, and understood to impute, the offence to which it points. A slanderous charge, however

disguised, may be detected in the words spoken, and will be actionable as if directly uttered.   Even the words, "you are no thief" may be actionable, and are so if ironically spoken, as held in *Johnson* v. *St. Louis, &c.*, 65 Mo., 529.

The words, "I have a suspicion that you and Boon have robbed my house, and therefore, I take you into custody," were left to the jury under the charge, that if the jury found the defendant meant to impute to the plaintiff an absolute charge of felony, the plaintiff would be entitled to a verdict; but if they should think that he imputed a mere suspicion of felony, the verdict should be for the defendant.   The jury found for the defendant, and upon a rule the charge of POLLOK, C. B., was sustained by a full court.   *Tozer* v. *Mashford*, 6 Ex. (M. H. and G.), 539.

In our case the import of the language cannot, upon any reasonable interpretation, be extended to embrace an accusation of larceny, and this is manifest upon its face, and so to be declared by the court.

We sustain the ruling of His Honor upon the ground that there are no actionable words set out in either narrative, and none upon which can be impressed a meaning to impute a crime in the light shed, upon the transaction described, by the attending circumstances and antecedent facts.   If the plaintiff has any remedy he has misconceived it in this action.   It must be declared there is no error, and the judgment is affirmed.

No error.                                   Affirmed.