JOHN WOZELKA v. JOHN P. HETTRICK.

*Slander—Pleading—Mitigation of Damages.*

1. An honest belief in the truth of a slanderous charge may be considered by the jury in mitigation of damages. It cannot justify nor exonerate from the consequences of the false accusation.

2. In an action for slander it is material only to aver in the complaint that the slanderous words were spoken of the plaintiff; the facts which point them and convey to the hearer the sense in which they are used, are matters of proof before the jury. The Code, §265.

3. The words set out in the complaint in this case are actionable *per se.*

(*Burns* v. *Williams*, 88 N. C., 159, cited).

This was a CIVIL ACTION tried before *Shipp, Judge,* at Spring Term, 1885, of CHOWAN Superior Court.

The defamatory words alleged in the complaint to have been spoken by the defendant concerning the plaintiff, and for the redress of which this action is brought, are contained in sections 5, 8 and 11, as follows:

Sec. 5. "That on or about August 15th, 1883, at about daybreak, the defendant met one Robert D. Bunch, a citizen of said town, on one of the public streets thereof and in reply to an inquiry of said Bunch, "What are you doing out so soon this morning?" said "Here! let me tell you—some venomous thief (or that venomous thief) has gone in my place—had a ladder and went to my window—got my pants, but didn't succeed in getting them out—something heavy in them fell and awoke me—it was my trusses. I found my pants were off my trunk, and on the floor—come with me one minute." He, the said Hettrick, then went in front of this plaintiff's house and examined the gate—pointed over the fence into plaintiff's yard and said: "There was a ladder lying here, where is it now? I don't see it now." He then went to the next gate to plaintiff's yard and stopped and said to Bunch, 'Say nothing.'"

Sec. 8. "That subsequently in the early morning of the same day at the store of Edward F. Waff, and in the presence of said Waff and of the aforesaid Bunch and in their hearing the defendant used the following language: "Some one has taken a ladder and gone up to my window to get my money, but he was badly mistaken, because there was but seven or eight dollars in my pocket. I was in bed asleep, there was something in my pocket, and when it fell, it awoke me—my wife said "what's that?" I said "I didn't know, I heard something fall." I got up and went to the window which was a little raised and hoisted it—and saw something which was all doubled up—I took it to be some spreads my folks had left out—I saw him then run and called him by name and said, "I know you!" At the same time in reply to Bunch's inquiry as to whether the party took the ladder away or left it, Hettrick said, "Of course he took it with him." And in reply to Waff, who asked, "Do you suspicion any one?" He said, "I do; I called him by name and told him I knew him— he was a white man—furthermore there was a dog in the yard and he seemed to be familiar with the man and kept quiet— while a few nights before when Jake Skinner had gone there to clean out the back-house he had raved and raved at him—it was one who knew all about the premises." He further said, "It was one of my near neighbors, and one who was well acquainted with the house, and a white man—that it was the same one that went in before—that he (the defendant) had asked him (meaning the plaintiff) if he had locked the door? and he replied yes—but he didn't take the key out—he (Hettrick) had thought that strange proceedings—that there used to be a ladder there (meaning at the plaintiff's house), but he didn't think it was there now—he was going to see."

SEC. 11. "That on Sunday next after August 15th, 1883, in the town of Edenton, in reply to Thomas Thompson, who said to the defendant, 'I understand John Wozelka tried to get in your window (meaning the window of said dwelling and bakery), to rob you—is it so?' The defendant said 'Yes.' And in reply

to the further question by Thompson, 'Did you see him?' he said 'No, I was in bed asleep with my wife—and I heard something fall in the room. I jumped up expecting it was some one after my pants. I found my pants on the floor—I went to the window and saw him on the outside crouched under the side of the house, he started to run, and ran towards the front of the house—I said, you need'nt run, I know you.'"

"And in reply to said Thompson, who asked why he did not succeed in getting the pants, he said "He reckoned the ladder was not high enough for him to grasp them, he was simply able to reach them and knock them down." In reply to the further question from Thompson if Wozelka did not have a key to the house, he said "yes: but there are three rooms he can't get in." He further said, "This occurred between three and four o'clock in the morning."

It was alleged in the complaint:

"That by the said language, acting and conduct, the said defendant meant to charge, and did charge and was understood to charge this plaintiff with the crime, 1st, of larceny, and 2d, of entering the dwelling and bakery of the defendant in the night time with the intent to commit a felony."

Each and all of the above sections and allegations were denied by corresponding sections and allegations of the defendant's answer.

The following issues on the above sections were submitted to the jury who found thereon as hereafter stated.

Issues: 1st.—Did defendant speak to R. D. Bunch the words set out in section five of the complaint, or words of the same substance? "Yes."

2nd.—Did defendant speak to R. D. Bunch and E. F. Waff the words set out in section eight of the complaint or words of the same substance and meaning? "Yes."

3rd.—Did the defendant speak to Thomas Thompson the words set out in section ...... of complaint or words of the same substance or meaning?   "Yes."

4th.—What damage has the plaintiff sustained?   "Twenty-five hundred dollars."

On the trial the appellant admitted that he spoke the words set out in the complaint, and denied only that they were spoken of the plaintiff.   Issues 1, 2 and 3, were discussed before the jury both by the plaintiff's and defendant's counsel in that view only, who told the jury that they should answer those issues " yes," if they found the words were spoken of the plaintiff, and " no" if they were not spoken of him.'

The defendant relied upon the plea of justification, and asked the court to submit this issue to the jury—"Was there in the mind of the defendant an honest belief that the words spoken by him were true?"

The court declined to submit that issue to the jury, but instructed them that they should consider it in making up their verdict as to damages, and if they found that the defendant had used the language of the plaintiff as alleged in the honest belief that it was true, they should consider that in mitigation of the plaintiff's damages.

That proposition was conceded by the plaintiff's counsel in their argument to the jury.

After the judge had charged the jury and they were about to retire, the defendant asked this charge—"If the defendant spoke the words of the plaintiff as alleged in the *bona fide* belief that that they were true, the jury would consider that in mitigation of any damages they might give in their verdict."

The court declined to charge the jury further on the subject, and said that he had already charged them that in substance, and that the plaintiff had not disputed the proposition.  The defendant excepted.

The jury having returned the verdict as set out, the defendant moved for a new trial, because :

1st—The court refused to submit the issue tendered by the defendant as above.

2d—The court refused to give the instruction as set out above. The court refused the motion and defendant excepted.

Counsel for defendant then moved in arrest of judgment upon the grounds that the words charged in the complaint are not actionable *per se*, and that as no special damage is alleged, or if so too indefinitely; and as no special damage was proved, the plaintiff cannot recover.

The court refused the motion and defendant excepted.

Thereupon judgment was rendered by the court for the plaintiff for the damages found by the jury and the cost. From which the defendant appealed to the Supreme Court.

*Mr. John Gatling,* for the plaintiff.
*Messrs. Geo. V. Strong, E. C. Smith* and *Pace & Holding,* for the defendant.

SMITH, C. J., (after stating the facts). It can scarcely be necessary, to sustain these rulings of the judge, to refer to adjudged cases or the authority of elementary writers. The utmost effect that could be given to the *bona fide belief* by the defendant of the plaintiff's guilt, if the language was thus uttered, was in mitigating the damages, and he had full benefit of this presentation of excuse. It could not justify or exonerate from the consequences of the false accusation. Certainly no wrong was done to the defendant.

After verdict on a motion in arrest of judgment, objection was taken to the sufficiency of the complaint in that the words charged were not actionable *per se*, and further, that no special damage was averred and none proved.

In our opinion the words in their plain import charge the plaintiff, perhaps, not with larceny, for the reason that there was no such dominion acquired over the goods, upon the statement of facts, as made an asportation an essential element in that

offence, but with the more serious crime of burglary or that akin to it, described and made infamous by statute.

The facts shown in the defendant's imputations are consistent with the entry of the plaintiff's arm through an open window, yet the hearer is not thus informed, and if he were the statutory crime is fully charged.

The other alleged defect is removed by our ruling that the words are themselves defamatory and admit of a claim for damages. But it is not very clear that special damages are not charged in article 17, on which we express no opinion.

Before concluding the opinion we advert to the narrative and conversational form in which the defamatory language is represented to have been used, obnoxious though in less degree to the criticism made on the complaint in *Burns* v. *Williams*, 88 N. C., 159, instead of pursuing the provisions of the statute intended to simplify the pleading. It is not "now necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose." Code, sec. 265.

The circumstances which point the words and convey to the hearer the sense in which they are used are proved before the jury, and it is only material to charge that they were spoken concerning the plaintiff.

There is no error, and the judgment should be affirmed.

No error. Affirmed.