WILLIS S. WRIGHT v. COMMERCIAL CREDIT COMPANY, INC.

(Filed 22 September, 1937.)

**Libel and Slander § 3—Where words are susceptible of two meanings, only one of which is defamatory, plaintiff must allege and prove defamation.**

Under an agreement between the parties, plaintiff auto dealer would have cars shipped to him and drafts for the purchase price with bills of lading and bills of sale sent to a bank, and defendant Credit Company would pay the drafts and hold the bills of sale as security for plaintiff's notes for the amount advanced, and plaintiff would sell the cars under defendant's direction, the arrangement being known as the "floor-plan." After a course of dealing between the parties, defendant wired plaintiff that it would not lift a draft on a shipment of cars "due to your previously having converted floor planned cars." *Held:* The words are susceptible of more than one meaning, and may be meaningless to a person unfamiliar with such transactions, and in the absence of allegation and proof that the employees of the telegraph company, to whom alone the words were published, understood that they conveyed a defamatory meaning, defendant's motion for judgment as of nonsuit should have been allowed.

STACY, C. J., dissenting.

THIS was a civil action for alleged libelous defamation before *Williams, J.,* at February Term, 1937, of PASQUOTANK. Reversed.

The plaintiff alleges that he was engaged in the automobile sales business, and that he had a contract with the defendant to assist him in the financing of the purchase of automobiles, that this contract provided that when automobiles were shipped to the plaintiff by the manufacturers, they were to send drafts for the amount of the purchase price thereof, with bills of lading and bills of sale to the plaintiff attached, to the First & Citizens National Bank of Elizabeth City, and that when the automobiles arrived the defendant Commercial Credit Company would pay 90 per cent of the purchase price, and the plaintiff would pay 10 per cent thereof and the freight; that the defendant would hold the bills of sale as security for notes of the plaintiff in the amount of the 90 per cent paid by it and the automobiles would be delivered to the plaintiff to be held at his place of business and sold by the plaintiff under the direction of the defendant, the proceeds of such sales to be applied first to the notes for the 90 per cent of the purchase price paid by the defendant; that this was known as the "floor-plan." The plaintiff further alleges that he had placed an order for certain Dodge automobiles, and that the automobiles had arrived in Elizabeth City, and that he received from the defendant a telegram reading:

"10-22-A       RICHMOND, VA., April 25; 1933.
"WILLIS S. WRIGHT, Elizabeth City, N. C.

"Due to your previously having converted floor planned cars will not be able to lift draft number D-3105 stop necessary to make other arrangements at once.       COMMERCIAL CREDIT—Henderson."

The plaintiff further alleges that the sending of this telegram was a publication of defamatory matter concerning him, and that he had been damaged thereby in the sum of $25,000.

The defendant admits that it had sent the telegram set forth in the complaint, but denies the other allegations.

From judgment for plaintiff the defendant appealed, assigning errors.

*M. B. Simpson and McMullan & McMullan for plaintiff, appellee.*
*Thompson & Wilson and George C. Green for defendant, appellant.*

SCHENCK, J.   The defendant in its brief abandons all assignments of error except those to the refusal of the court to grant its motion for judgment as of nonsuit, and to the judgment as signed.

The alleged libelous words are "your previously having converted floor planned cars." These words are susceptible to more than one meaning, and may have no meaning at all to a person not familiar with "floor planned cars," and this ambiguity renders necessary an allegation that the telegram was published to a third party who understood that it conveyed a defamatory meaning, as well also as proof of such allegation.

"Since, in order to constitute a publication, it is necessary that some third person understood the defamatory matter, where the words are capable of conveying the defamatory meaning claimed for them, and also equally capable of conveying some other and innocent meaning, there must be averments that third persons understood the language as conveying the alleged defamatory meaning." 37 C. J., p. 34, par. 355.

"So, if the offense consists in words of themselves unmeaning, there must be an averment of some fact to support the innuendo and give them a meaning. The jury must not only be satisfied that the defendant's meaning was as charged, but that he was so understood by the persons who heard him, which latter part can only be established by their oath. *Woolworth v. Meadows,* 5 East., 46. It is the same as if the charge was made in the Chinese or any other foreign tongue (which the hearers are not presumed to understand), and in such case there must be an averment, not only that the defendant meant to make the charge, but that he was so understood by those who heard him." *Briggs v. Byrd,* 33 N. C., 353.

"On the other hand, if it (the alleged defamatory declaration) be capable of two meanings, one actionable and one not, it is for the jury to determine which of the two was intended and so understood by those to whom it was addressed or by whom it was heard." *Oates v. Trust Company,* 205 N. C., 14.

The complaint contains no allegation, and there is no proof to the effect that the telegram upon which the action was predicated was understood by the agents and employees of the telegraph company, to whom alone the publication was made, as conveying a defamatory meaning. The motion for judgment as of nonsuit should, therefore, have been allowed.

The judgment of the Superior Court is

Reversed.

STACY, C. J., dissenting: The telegram in question is rendered actionable by the factual situation, fully set out in the complaint, and the innuendo, "the defendant by said writing charging the plaintiff and intending to charge the plaintiff, with a crime punishable in the State's Prison, to wit, . . . embezzlement, . . . larceny, . . . fraud, or other immoral conduct, tending to disgrace or degrade the plaintiff." *Wozelka v. Hettrick,* 93 N. C., 10; *Lay v. Publishing Co.,* 209 N. C., 134, 183 S. E., 416; *Broadway v. Cope,* 208 N. C., 85, 179 S. E., 452; *Hamilton v. Nance,* 159 N. C., 56, 74 S. E., 627; *Gudger v. Penland,* 108 N. C., 593, 13 S. E., 168; *Watts v. Greenlee,* 13 N. C., 115; McIntosh, N. C. Prac. & Proc., 363; 17 R. C. L., 394. The *colloquium* is no longer necessary in pleading. C. S., 542.

The publication is alleged to be libelous *per se,* and the language used is susceptible of such construction. 36 C. J., 1229. This saves the complaint from the charge of defectiveness, and the jury was justified in drawing the inference it did. *Oates v. Trust Co.,* 205 N. C., 14, 169 S. E., 869; *McCurry v. McCurry,* 82 N. C., 296.

There is a distinction between language susceptible of two interpretations, one libelous the other not, and a colloquialism or code expression which is without meaning except to those who understand it. *Sowers v. Sowers,* 87 N. C., 303. This difference was pointed out in *Sasser v. Rouse,* 35 N. C., 143, where it was held (as stated in the syllabus, which accurately digests the opinion):

"In an action of slander a plaintiff has no right to ask a witness what he considers to be the meaning of the words spoken, except in the cases:

"First. Where the words in the ordinary meaning do not import a slanderous charge, *if they are susceptible of such a meaning,* and the plaintiff *avers* a fact, from which it may be inferred that they were used for the purpose of making the charge, he may prove such averment, and

then the jury must decide whether the defendant used the words in the sense implied or not.

"Secondly. The exception is, where a charge is made by using a cant phrase, or words having a local meaning, or a nickname, when advantage is taken of a fact known to the person spoken to, in order to convey a meaning which they understood by connecting the words (of themselves unmeaning) with such fact, then the plaintiff must make an averment to that effect, and may prove not only the truth of the averment, but also that *the words were so understood by the person to whom they were addressed;* for otherwise they are without point, and harmless."

It is well established that "when the words spoken are ambiguous and fairly admit of a slanderous interpretation, it is then a question for the jury to determine on the sense in which the words were used and whether they amounted to the slanderous charge to the reasonable apprehension of the hearers." *Reeves v. Bowden,* 97 N. C., 29, 1 S. E., 549; *Lucas v. Nichols,* 52 N. C., 32; *Simmons v. Morse,* 51 N. C., 6; *McBrayer v. Hill,* 26 N. C., 136; *Emmerson v. Marvell,* 55 Ind., 265. And it is not competent to show by parol testimony that the hearers understood the "speaker to mean differently from the common import of the words." *Pitts v. Pace,* 52 N. C., 558; *S. v. Howard,* 169 N. C., 312, 84 S. E., 807; *Minton v. Ferguson,* 208 N. C., 541, 181 S. E., 553.

In the case at bar, the language used, if not actionable *per se* as a matter of law, is susceptible of a libelous construction. The result of the trial is supported by the record.