PHILLIP BARR v. SOUTHERN BELL TELEPHONE AND
TELEGRAPH COMPANY

No. 7121SC531

(Filed 12 January 1972)

**1. Privacy— right of privacy — cause of action — damages**

North Carolina has recognized a cause of action for an invasion
of an individual's right of privacy and has recognized in such in-
stances a right to nominal damages where special damages cannot be
shown.

**2. Privacy— right of privacy — action against telephone company — ad in
yellow pages — use of wrong picture**

Where plaintiff testified that he contracted with the defendant
telephone company to insert in the yellow pages his employer's ad-
vertisement, which was to include plaintiff's photograph and name,
and that the telephone company published a picture of someone other
than plaintiff and placed plaintiff's name below the picture, plaintiff
offered sufficient evidence to support a jury finding that the telephone
company had invaded his right of privacy and that he was entitled
to nominal damages at least.

APPEAL by plaintiff from *Lupton, Judge,* 15 March 1971
Session of Superior Court held in FORSYTH County.

Plaintiff instituted this action to recover damages for in-
vasion of his privacy by defendant in the publication of an ad-
vertisement in the yellow pages section of defendant's 1970
Winston-Salem telephone directory.

The basic facts, which are not in dispute, disclose the fol-
lowing: Plaintiff is the customer service director for American
Rug Cleaning Company, Inc., of Winston-Salem. In this capacity
he handles all advertising contracts, takes the customer's tele-
phone orders, goes into homes to make estimates of charges for
rug cleaning, and handles customer's complaints. Plaintiff pre-
pared an advertising "layout" to be published in the yellow
pages section of defendant's 1970 Winston-Salem telephone
directory. Among other things, the planned advertisement con-
tained a picture of plaintiff with plaintiff's name appearing
thereunder plus the designation "customer service." When the
directory was published and distributed for 1970, the advertise-
ment for American Rug Cleaning Company was printed as pre-
pared by plaintiff except that a picture, or likeness, of someone
other than plaintiff was, through error, substituted for that of
plaintiff. The picture which erroneously appeared in the adver-

tisement over plaintiff's name did not tend to degrade plaintiff in the eyes of the public; however, it was the picture of an older man.

At the time of contracting for the advertisement, the president of plaintiff's employer signed the contract for publication. In addition plaintiff personally signed an agreement which reads as follows:

> "The undersigned, Phillip A. Barr, hereby consents to the use, publication, distribution and display of any portrait, picture, film or photographic reproduction of myself, and of any prints or copies thereof or therefrom, in whole or in part, for advertising purposes, and for purposes of trade or otherwise, in the discretion of the advertiser or user of the advertising space in a telephone directory or in the discretion of the Southern Bell Telephone and Telegraph Company or its associated companies, or either of them, or its or their successors or assigns.
> Dated, February 19, 1970.
>
> > PHILLIP A. BARR
> > 2380 Old Lexington Rd.,
> > Winston-Salem"

Appearing after plaintiff's signature to the above agreement, is a further agreement which seems to be designed for execution by the purchaser of advertising (in this case plaintiff's employer). However, this further agreement was also signed by plaintiff individually. It reads as follows:

"Southern Bell Telephone and Telegraph Co.

Atlanta, Georgia

> The undersigned agree(s), in consideration of the acceptance and publication of the undersigned's advertisement in your Telephone Directory or Directories that I (we) will defend and protect the Southern Bell Tel. & Tel. Co. in any suit or legal proceeding based upon or arising out of the use or publication by it or its associated companies and save it and them harmless from any and all loss, expense or damage of any kind or character which it may sustain or be subjected to by reason of the publication therein of the attached photograph or any part thereof, and that said

photograph is a photograph of _____ who signed the above consent, the use of which photograph or any part thereof is covered by such consent.

                                    PHILLIP A. BARR"

The contract for advertisement which was entered into between plaintiff's employer and defendant contained the following statement under the section entitled "Terms and Conditions":

> "6. The Telephone Company's liability on account of errors in or omissions of such advertising shall in no event exceed the amount of charges for the advertising which was omitted or in which the error occurred in the then current directory issue and such liability shall be discharged by an abatement of the charges for the particular listing or advertisement in which the omission or error occurred."

On the first page of the yellow pages section of defendant's directory the following appeared:

> "The Yellow Pages are published for the benefit and convenience of our subscribers. Each business subscriber is listed under one general classification without cost. The Telephone Company assumes no responsibility or liability for errors or omissions occurring in the Yellow Pages. Errors or omissions will be corrected, in a subsequent issue, if reported by letter to the Company."

After the error was called to defendant's attention by plaintiff's employer, defendant abated the charges to plaintiff's employer for the advertisement. No public statement or announcement has been made or printed by defendant with respect to the error.

Defendant caused the deposition of plaintiff to be taken, wherein plaintiff testified, among other things, as follows:

> "It would be fair to say that, from my testimony, I have had no actual loss of money as a result of the mistake in the publication of the photograph other than my own in the yellow pages. I don't claim to have had any actual money damages.

                    *    *    *

Barr v. Telephone Co.

"I don't make any claim that the telephone company made this mistake deliberately. As to the damages I contend to have sustained by reason of this mistake, I wouldn't know about the monetary loss. I haven't spent any money to print a card or ad or anything attempting to correct it. As to damages other than money, I have received an awful lot of calls on the ad from different customers. Just customers that called and wanted information about it from the ad. They will read the ad and then they will call me and talk to me, and they say, 'Well, I've seen your picture here in the ad,' and being that it's not my picture I feel that I'm obligated to tell them that it is not me. This goes on, you know, all the time because the ad stays in the phone directory. As to what I say to them in explaining that it is not my picture, I tell that I'm 23 years old and that the telephone directory made a mistake and printed the wrong picture. The picture in the ad appears to be a much older man. In some instances, the people who called in were people I knew, and in other instances were people I did not know. They were calling in response to the ad. The telephone number, the name of the company and my name in the ad are all correct. By referring to this ad, they are able to get in touch with the right person at the right place, calling the right number.

"As to any other way I claim to have been damaged, when I go into someone's home and they have called in reference to the ad and I present my business card that has my name and the company name and so forth on it, a lot of times I am questioned as to who I am and then I have to go through the whole explanation again, that the telephone company made an error. It is very nauseating—I guess would be a good word—after a while. At first people thought it was funny and everyone laughs about it, but I don't laugh very much. In each instance, I have been able to explain that it was a mistake. The customer has accepted my explanation. Those would be the only two ways in which I would say that there has been damage. I have no way of knowing whether I have lost any customers on account of the ad. As a result of the ad, I have received telephone calls from new customers."

The matter was heard upon defendant's motion for summary judgment. After considering the pleadings, plaintiff's dep-

osition, defendant's answers to plaintiff's interrogatories, and the affidavit of an officer of defendant, Judge Lupton was of the opinion that there was no genuine issue of fact to be submitted to the trial court, and entered summary judgment for defendant. Plaintiff appealed.

Wilson, Morrow & Boyles, by John F. Morrow, for plaintiff.

Womble, Carlyle, Sandridge & Rice, by William F. Womble and James C. Frenzel, for defendant.

BROCK, Judge.

[1] Plaintiff's complaint and evidence before the trial judge, and his entire argument on this appeal, are centered upon his contention that defendant has invaded plaintiff's right of privacy. North Carolina has recognized, as have most states, a cause of action for an invasion of an individual's right of privacy, and has recognized in such instances a right to nominal damages where special damages cannot be shown. Flake v. News Co., 212 N.C. 780, 195 S.E. 55.

For discussions of the beginning and development of the recognition of a cause of action for invasion of an individual's right of privacy and discussions of the nature of the privacy so protected, see: Peck v. Tribune Co., 214 U.S. 185, 53 L.Ed. 960, 29 S.Ct. 554 (1908) ; Flake v. News Co., supra; Pavesich v. New England Life Ins. Co., 122 Ga. 190, 50 S.E. 68 (1905) ; Sinclair v. Postal Telegraph & Cable Co., 72 NYS 2d 841; Annot., "Invasion of Privacy by Use of Plaintiff's Name or Likeness for Nonadvertising Purposes," 30 ALR 3d 203; Annot., "Invasion of Privacy by Use of Plaintiff's Name or Likeness in Advertising," 23 ALR 3d 865; Annot., "Right of Privacy," 14 ALR 2d 750; Annot., "Right of Privacy," 14 ALR 2d 750 (ALR 2d Later Case Service) ; Annot., "Right of Privacy," 168 ALR 446; Annot., "Right of Privacy," 138 ALR 22; Hofstadter and Horowitz, THE RIGHT OF PRIVACY, (1964) ; Prosser, LAW OF TORTS, § 117 (4th ed. 1971) ; ALI Restatement of Torts, § 867; Warren and Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193 (1890) ; Nizer, The Right of Privacy, 39 Mich. L. Rev. 526 (1941) ; Prosser, Privacy, 48 Calif. L. Rev. 383 (1960) ; Gordon, Right of Property in Name Likeness, Personality and History, 55 Nw. U. L. Rev. 553 (1961) ; Bloustein, Privacy as an

*Aspect of Human Dignity: An Answer to Dean Prosser,* 39 N.Y.U. L. Rev. 962 (1964).

[2]   In the case now before us, the evidence tends to show that plaintiff consented that his privacy could be invaded by defendant to the extent of publishing his name and picture together in his employer's advertisement. The evidence further tends to show that defendant published the likeness of someone other than plaintiff and published plaintiff's name as identification of the person whose likeness was published.

This evidence would justify, although not compel, the jury to find that defendant had gone beyond the scope of plaintiff's consent and thereby had invaded plaintiff's right of privacy. Such a finding by the jury would entitle plaintiff to an assessment of nominal damages even though he may not be able to show special damages.

In our opinion the trial judge committed error in granting summary judgment for defendant.

Reversed.

Judges VAUGHN and GRAHAM concur.