**Darryl HARRISON, Appellant,**

v.

**The WASHINGTON POST COMPANY et al., Appellees.**

No. 12546.

District of Columbia Court of Appeals.

Argued March 8, 1978.

Decided Sept. 1, 1978.

Samuel J. Lowe, Washington, D. C., with whom Clinton W. Chapman, Washington, D. C., was on brief, for appellant.

John B. Kuhns, Washington, D. C., with whom Lon S. Babby, Washington, D. C., was on brief, for appellees.

Before KELLY, NEBEKER and FER-REN, Associate Judges.

KELLY, Associate Judge:

This appeal is from an order in the trial court granting summary judgment in favor of the appellees on appellant Darryl Harrison's complaint seeking damages for defamation of character and invasion of privacy.[1] We affirm.

Appellant's causes of action were based on a March 29, 1974, evening telecast by WTOP–TV of a film strip with spoken commentary. The appellees broadcast a news report of a bank robbery which had oc-

---

1. Appellant brought this action against Post-Newsweek Stations, Capital Area, Inc. and the Washington Post Company. Appellee Post-Newsweek Stations, Capital Area, Inc. (license holder for WTOP–TV), is a wholly owned subsidiary of Post-Newsweek Stations, Inc., which is a wholly owned subsidiary of appellee Washington Post Company. For the purposes of the summary judgment motion filed in the trial court, the Washington Post Company assumed *arguendo* that it could be held liable for the actions of Post-Newsweek Stations, Capital Area, Inc. The ownership of WTOP has recently been changed; the call letters are now WDVM.

curred earlier in the day. Accompanying the spoken news report was a film strip that had been photographed by a camera crew at the scene of the crime. The broadcast reported that police had charged one Tyrone Gregory with the bank robbery, described the robbery, and noted Gregory's alleged participation in other bank robberies. The newscast then reported that in the flurry of the post-robbery excitement, the police had seized but later released several men who fit the holdup man's description.[2] Juxtaposed with the reference to the two unnamed individuals, two men in tan coats were shown being escorted by plainclothes police officers into the bank that had been robbed.[3] One of the unnamed persons was appellant.

## I

■ To be successful in his defamation action based on libel, appellant must have been prepared to show that the news broadcast, comprised of statements and/or film strips, was false, was defamatory, and was published with some degree of fault. *See, e. g., Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Since the pleadings, depositions, answers to interrogatories, and affidavits of record showed, without dispute of material fact, that appellant could not meet any of the above requirements, the grant of summary judgment on his claim for defamation was proper.[4]

■ As to the falsity of the broadcast, appellant conceded in his deposition that both the WTOP–TV news broadcast and the film strip were accurate and true. In claiming that the broadcast was defamatory, appellant argues that it created the impression by innuendo that he was a bank robber by the name of Tyrone Gregory, the arrested suspect, or another unnamed suspect.[5] However, in determining whether the broadcast was defamatory in light of extrinsic facts, as appellant claims, the trial court must decide if the words (and herein, the accompanying film strip) are reasonably susceptible of or reasonably could be understood to have the meaning suggested by the innuendo. *Lorentz v. R. K. O. Radio Pictures, Inc.,* 155 F.2d 84, 87 (9th Cir. 1946); cf. *Davis v. R. K. O. Radio Pictures, Inc.,* 191 F.2d 901 (8th Cir. 1951). Based on the juxtaposition of the commentary and the film strip, the construction that appellant urges has no record support. At the time the two men in tan coats (including appellant) were shown being escorted by the police, the commentator was reporting that "[b]oth men were later released." We thus agree with the trial court's determination that no reasonable person who viewed and heard the broadcast could have received the impression that appellant was either an ac-

---

2. The actual text of the newscast was:

Police have charged 24 year old Tyrone Gregory . . . with today's early afternoon hold up of the National Savings and Trust . . . Fifteenth and New York Downtown. It happens that Gregory just yesterday was charged with another bank hold up . . . this one took place on Wednesday this week . . . at the National Permanent Savings and Loan on Connecticut Avenue. Gregory was out on bail at the time of today's hold up. Police say Gregory is also going to be charged with two other D. C. bank robberies . . . that took place earlier this month. [Questioning witnesses.] The style of today's hold up was similar to previous ones . . . with the hold up man . . . simply handing a teller a note . . . In the flurry of the post robbery excitement . . . police seized a couple of men who fit the hold up man's description . . . both of them wore tan coats similar to the suspect's. Both men were later released.

3. Neither the content nor the juxtaposition of the commentary and the film strip which accompanied it is in dispute.

4. *See, e. g., Thompson v. Evening Star Newspaper Co.,* 129 U.S.App.D.C. 299, 394 F.2d 774, *cert. denied,* 393 U.S. 884, 89 S.Ct. 194, 21 L.Ed.2d 160 (1968); *Washington Post Co. v. Keogh,* 125 U.S.App.D.C. 32, 365 F.2d 965 (1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967).

5. Initially, appellant had claimed that by merely showing him on WTOP–TV, the broadcast was defamatory. Since on appeal appellant changed the basis of his "defamatory" charge and only argued libel *per quod* (by innuendo/extrinsic facts), we focus our analysis accordingly.

complice to or the perpetrator of the robbery.

■ Even if the broadcast was defamatory, appellant would have to prove that the publication by the news media herein was done with some degree of fault,[6] either malice or negligence.[7] Under either fault standard, appellant advances no facts, disputed or undisputed, to suggest that the appellees knew that the broadcast was false or had any doubts as to its veracity, *i. e.,* that they acted with malice. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Nor is there any purported evidence advanced of negligent action by the appellees, *e. g.,* lack of a reasonable basis for publication or failure to investigate the truth. The commentator, in fact, was careful to ensure that the film of the two men who were later released did not appear at the time she was reporting that one Tyrone Gregory had been charged with the robbery.

## II

Appellant's contention that the news broadcast was an invasion of his privacy is based on two theories of that tort—public disclosure of embarrassing private facts and publicity which places the individual in a false light in the public eye. The privacy action fails on both theories.[8]

■ Appellant presents us with several possible bases to support his claim that the WTOP–TV news broadcast invaded his privacy by publicly disclosing "essentially" private facts. He argues the broadcast is actionable based on appellees' "expanded" publicity of these essentially private facts. But there is no protected privacy interest in preventing the further publicity of what appellant himself left open to the public eye. Restatement (Second) of Torts § 652D, Comment b (1977). As to the additional argument that appellees should be held liable for portraying appellant in an embarrassing position, *i. e.,* being shown escorted by police officers and taken to the place of the robbery, it is well settled law that an invasion of privacy action does not lie as to events which take place in public view. *See, e. g.,* W. Prosser, The Law of Torts at 811 (4th ed. 1971). And, in this case, the film was taken by a WTOP–TV cameraman while standing on a public sidewalk. Finally, there is no cause of action for an accurate report of a matter of legitimate public interest or concern. *See Elmhurst v. Pearson,* 80 U.S.App.D.C. 372, 153 F.2d 467 (1946). *See also Sidis v. F–R Publishing Corp.,* 113 F.2d 806 (2d Cir.), *cert. denied,* 311 U.S. 711, 61 S.Ct. 393, 85 L.Ed. 462 (1940); Restatement (Second) of Torts § 652D, Comment f (1977). Clearly, the contents of the WTOP–TV news broadcast, *i. e.,* the bank robbery and police activities immediately thereafter, were events of substantial public interest.[9]

*Affirmed.*

6. The Supreme Court has held that for libel plaintiffs who are private individuals, the states may define their own standard of liability "so long as they do not impose liability without fault . . . ." *Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 347, 94 S.Ct. at 3010.

7. The post-*Gertz* standard of liability for this jurisdiction is unclear. *Compare Hatter v. Evening Star Newspaper Co.,* Civil No. 8295–75 (D.C.Sup.Ct. March 15, 1976) *with Phillips v. The Evening Star Co.,* Civil No. 9999–75 (D.C. Sup.Ct. June 30, 1977). On the facts of this case, we need not reach the issue of the proper post-*Gertz* standard for the District of Columbia. The issue is, however, before this court in *Phillips v. The Evening Star Co.,* (No. 13230, filed February 9, 1978) and *The Evening Star Co. v. Phillips* (No. 13231, filed February 23, 1978).

8. Appellant claims that he was placed in a "false light" because appellees' broadcast depicted him as either a possible suspect or the actual perpetrator of the robbery. Since appellant's false light analysis is identical to his defamation analysis, we dispose of this claim in a like manner and address appellant's "public disclosure of private facts" claim.

9. We reject appellant's factual analogy to *Briscoe v. Reader's Digest Ass'n,* 4 Cal.3d 529, 93 Cal.Rptr. 866, 483 P.2d 34 (1971), and conclude that the revelations herein were neither so intimate nor unwarranted in view of the victim's position as to outrage the community's notion of decency. *Time, Inc. v. Hill,* 385 U.S. 374, 383, 87 S.Ct. 534, 17 L.Ed.2d 456 (1964). *See Virgil v. Time, Inc.,* 527 F.2d 1122, 1129 (9th Cir. 1975); Prosser, *supra* at 811–12.